124-2111 WC. Henri Williams, Appellant by Adam Rosner v. The Illinois Workers' Compensation Comm'n et al. Terminal Getaway Spa, Appalee by Marcy Singer-Ruiz. Mr. Rosner, again, you may proceed. Good afternoon, Your Honors. Again, Adam Rosner on behalf of the Plaintiff Appellant, Henri Williams. The issue on this claim is accident. Again, this is a question of fact to be determined by the Commission, so it is a manifest weight standard. The issue on this claim, Your Honors, is that the reasoning, it's a manifestation date, so it's a repetitive trauma injury. And I cited to some cases in my brief the 3D Discount Stores and the Peoria County Board where this court has been, for lack of a better term, fluid. And when determining the manifestation date, it's when it becomes reasonably or clearly apparent to a reasonable person that they have this condition and it's causally related to their work activities. And the issue, if you look to the Commission's decision, and it was an affirmative doubt of the arbitrator's decision, C-946 through 947 of the transcript, it states the arbitrator finds that it should have become apparent to petitioner around the six-month mark after starting work for respondent that his developing hand condition was potentially linked to his new job. And plaintiff takes issue with the potentially linked term to his new job, the reason being that that's not the standard. So it is a manifest weight, question of fact, but our argument is that the Commission misapplied or used the incorrect standard when determining the manifestation date. Potentially linked is not the standard. The standard is the reasonable person standard when it became clearly apparent. Plaintiff did testify at his trial that he did start feeling some pain or symptoms in his hands after working for defendants for about six months. However, he had not started treatment at that point. And in the 3D discount store's claim, it states, the score states it's not necessarily when the plaintiff or the claimant starts feeling symptoms. It can be well after that manifestation. And here, he started feeling symptoms six months thereafter. He has the August 30, 2015 work accident involving his index, the acute trauma involving his index and ring finger. He treats for that. And then on October 28, 2015, plaintiff gets recommended for an EMG, undergoes the EMG, which shows bilateral carpal tunnel syndrome the next day. And then Dr. Fink, the treating physician, on March 30, 2016, authors a narrative report where he says he's got carpal tunnel, his job is a masseuse. I believe it's causally related to job activities as a masseuse. So, by reasoning of the 3D discount store case, the manifestation date theoretically can be between any day between October 28, 2015 and the date in which there's an actual causal link by his treating physician on March 30, 2016. So, the commission's decision that the standard is potentially linked versus a reasonable person standard is a misapplication. So, it is our position that using the reasonable person standard that this court has used in the past, the manifestation that we would request that it be remanded for further proceedings at the end of the manifestation date was October 28, 2015 when the accident arose out of him, a plaintiff's appointment. Thank you. Questions from the court? No? Okay. Thank you. I have time again in reply. Ms. Ruiz, you may respond. May it please the court, counsel. My name is still Marcy Ruiz, and I have the pleasure of representing Terminal Getaway Spa in this matter. Plaintiff filed this appeal alleging that the Plaintiff's arguments on these issues are arguments of credibility and arguments of weight. They argue Dr. Fink is more credible than Dr. Fernandez, and that Dr. Fernandez's opinion should not be relied upon by the commission. However, these arguments do not have merit. It's the exclusive function of the commission to judge the credibility of the witnesses, determine the weight to be given their testimony, and resolve conflicting medical evidence. Based upon the evidence in the record, the commission could and did properly conclude that Plaintiff failed to prove he suffered accidental injuries arising out of and in the course of his employment, and the decision of the commission should be affirmed in its entirety. In finding the Plaintiff failed to prove he suffered accidental injuries, the record reveals, and the commission relied on several facts. First, Plaintiff testified that he had bilateral wrist and hand pain since 2014, but he did not mention this to his doctors until 2016. Plaintiff was treating with two hand specialists for complaints of hand pain from September 2015 until March of 2016, and never complained of bilateral hand numbness or any other carpal tunnel type complaints, and never told the doctor of these complaints. The commission found this delay in reporting his symptoms significant. Dr. Fink, the treater, admitted in his deposition that he treated the Plaintiff for months and Plaintiff never complained of bilateral carpal tunnel symptoms. The EMG the claimant underwent was not due to diagnose or confirm the presence carpal tunnel syndrome. We know this because as of the date of the EMG, claimant did not complain of carpal tunnel symptoms. He was not being treated or evaluated for carpal tunnel syndrome. The EMG was ordered due to the left index finger complaints, which is not the subject of this appeal. That Dr. Fink testified that Plaintiff did not complain of bilateral wrist and hand complaints at his initial visit in October of 2015 and into the spring of 2016. Due to not having hand and wrist complaints, Dr. Fink testified in the deposition that he did not examine the claimant for these problems. Dr. Fernandez opined that the duties of a massage therapist would not cause carpal tunnel syndrome. That the objective and provocative testing for carpal tunnel syndrome, which are the Phelan's and the Tenell's tests, did not demonstrate signs and symptoms of carpal tunnel syndrome. That the numbness and tingling associated with carpal tunnel syndrome are sensory findings. The EMG did not reveal any sensory findings. Based upon all of these facts, the Commission could and did properly conclude that Plaintiff failed to prove he suffered accidental injuries arising out of and in the course of his employment. For these reasons, the decision must be affirmed. To the extent that medical testimony might be conflicting, the resolution of such conflicts falls within the province of the Commission to decide is they are the trier of fact. It's now this Court's role to reweigh the evidence or substitute its judgment for that of the Commission. Based upon the same reasoning, the Commission could and did properly conclude that there was no causal connection between the carpal tunnel syndrome and plaintiff's work with defendant. This Court does not have to agree with the Commission's determination, but that does not mean that this Court can overturn the Commission's decision. It does not mean that this Court can substitute its judgment for that of the Commission's. Due to its expertise in medical matters, the Commission is given deference when it makes these types of decisions. In this claim, with this record, the Commission drew reasonable inferences with the evidence presented and the opposite conclusion is not clearly apparent. Dr. Fernandez is an orthopedic surgeon who specializes in upper extremities. It is reasonable for the Commission to rely on an expert like Dr. Fernandez. Plaintiff does not appear to take issue with the Commission's adopting Dr. Fernandez's opinions over those of Dr. Fink when finding plaintiff failed to prove he suffered accidental injuries arising out of in the course of his employment. Rather, in his brief, he suggests that the Commission erred when they noted that plaintiff should have become aware of the relationship between his work duties and his hand complaints six months after he began working for defendant. Plaintiff argues the manifestation, excuse me, plaintiff argues that the manifestation date that he used of October 28, 2015 is the correct date of manifestation and the Commission should have inferred that the manifestation date was between October 28 of 2015 and March 30 of 2016. The Commission did not deny benefits because they believe plaintiff got the manifestation date wrong. They denied benefits because the evidence in the record did not support plaintiff's claim of accidental injuries arising out of and in the course of his employment. However, I will address plaintiff's arguments by stating that he explains the manifestation date he used as being the day before the EMG was done. However, the treating medical records reveal that the plaintiff did not complain of carpal tunnel symptoms before the EMG was performed. That the EMG was not performed due to carpal tunnel complaints or carpal tunnel symptoms or to rule in or even to rule out that he suffered from carpal tunnel syndrome. But rather, it was due to his index finger injury he suffered in another claim, which is the subject of another appeal. That it wasn't until five months after the EMG that plaintiff complained of carpal tunnel symptoms. By this time, he had not been working for employer for seven months. The plaintiff was treating with two different hand specialists during the five-month period between the EMG and the first time he complained of carpal tunnel complaints to his doctors, yet he never mentioned any problems with his bilateral hands to either doctor during this five months of treatment. The Commission in denying benefits bates his decision on the medical evidence after a thorough review of the treating records and the deposition testimony of the doctors. In his appeal, claimant raises no issues of law. All the issues raised are questions of fact and the manifest weight standard must be used. The inquiry whether the record contains sufficient evidence to support the Commission's determination and it does in this claim. It's not the role of this court to reweigh the evidence. The Commission's decision is supported by the getaway spot. We respectfully request the decision of the Commission be affirmed in its entirety. Thank you. Thank you, counsel. Mr. Rosner, you may reply. Oh, you're on mute. My apologies. Thank you, your honor. So, I only address in response to the issue on causation, I only addressed the issue of accident and the manifestation date because in Commission's decision, while they did give some reasoning in the causation section because they didn't find an accident arose out of in the course of plaintiff's employment, they found all other issues moved. So, it's our position that if we were to find a manifestation date and an accident did arise out in the course of plaintiff's employment, causation would be remanded back the Commission for further review. In response to Ms. Singer-Ruiz's argument, it's not necessarily just that the, you know, the Commission found the manifestation date was incorrect, it was a misapplication of what the standard is. And again, as I stated, the standard is a reasonable person standard, not this potentially linked to whether one plaintiff thought it was back to his employment. And, you know, again, going back to the 3D discount stores case, it's not necessarily when he initially felt symptoms, it's when he knew he had carpal tunnel, or when you know you had the symptoms and you know that the cause is related. Again, here, theoretically, the manifestation date can be any time between he starts feeling the symptoms and when we have a causation opinion from the treater, being Dr. Fink, March 30, 2016, that he knows that his condition is related to his work activities as a masseuse. You know, plaintiff is a layperson, he can't diagnose himself and he can't give a legal causation opinion. So I think, you know, the Court has been, has given deference to when a manifestation date can be. So with that, again, we respectfully request that the case be remanded back to the Commission for further pursuance. Thank you. Thank you, counsel. Questions from the Court or anyone? No? Okay. Well, thank you, counsel, both for your arguments in this matter this afternoon. It will be taken under advisement and a written disposition shall issue.